### In re HARTRIDGE.

(Supreme Court, Appellate Division, First Department.  March 6, 1914.)

ATTORNEY AND CLIENT (§ 44*)—DISBARMENT FOR UNPROFESSIONAL CONDUCT.

Where it is shown that an attorney retained in a criminal case was paid a large sum of money for use in defendant's behalf, and without authority used it to suppress testimony in violation of Pen. Law (Consol. Laws, c. 40) §§ 379, 570, and for other unauthorized purposes, expending it in gambling and otherwise appropriating it to his own use, and thereafter presented a false claim against his client for expenditures never made, he is guilty of unprofessional conduct which calls for his disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

In the matter of the application of the Association of the Bar of the City of New York to discipline Clifford W. Hartridge, an attorney, for professional misconduct.  Respondent disbarred.

See, also, 144 N. Y. Supp. 1119.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

James R. Ely, of New York City, for petitioner.
Clifford W. Hartridge, of New York City, pro se.

INGRAHAM, P. J.  The respondent was the attorney and counsel for one Harry K. Thaw, who had been indicted for the murder of Stanford White and who was twice tried in the city of New York. The killing of White by Thaw was conceded, and the defense was temporary insanity brought about by an alleged statement by Thaw's wife to Thaw as to her relations with White prior to her marriage to Thaw.  It had become known to the respondent that Thaw had lived a dissolute life in New York, and had been intimate with prostitutes before his marriage.  The substance of the first charge, which the referee has sustained, is that he paid large sums of money to various prostitutes to prevent them from giving information to the district attorney which could be used against Thaw on his trial.  The respondent received over $100,000 from Thaw and his mother to be used

in Thaw's defense. After the acquittal of Thaw, the respondent sued Mrs. Thaw for over $90,000 in addition to the amount which he had received, and it was upon the trial of that action in the United States Circuit Court that the facts were developed upon which these charges were based. Upon that trial the respondent claimed to have paid upwards of $39,000 to prostitutes and others connected with them to suppress their evidence and prevent the district attorney from procuring their testimony. The official referee, upon the respondent's own testimony in the United States Circuit Court and before him, has found that respondent's acts in respect to the testimony of witnesses was in violation of sections 379 and 570 of the Penal Law.

There is a further charge that the sum of about $39,000 procured from Mrs. Thaw for expenses and disbursements in the defense of her son were used for other purposes than those for which it had been paid to him and was in fact appropriated by the respondent to his own use. The referee finds that there is no evidence that the disbursements to these women and others associated with them were made either with the authority of the prisoner or of his mother. The respondent appears to have gotten into relations with a Mrs. Merrill, who apparently was a prostitute and the keeper of a house of assignation, which these prostitutes and others frequented. It was to this Merrill woman and other women, whom he met at this house, that the respondent claims to have paid a large proportion of this money. That such an expenditure as has been detailed by the respondent was not authorized by Mrs. Thaw or by her son is apparent, and, if they were made at all, it was a gross abuse of the confidence reposed in the respondent and without the slightest authority from his clients. The respondent's clients requested him to take receipts and vouchers for all payments made by him, with which request he failed to comply.

The referee also finds the respondent guilty of using portions of the money advanced to him by Mrs. Thaw in gambling houses and in otherwise appropriating it to his own use. The referee further finds that the respondent in the suit in the United States Circuit Court presented claim against Mrs. Thaw and bills of particulars in which he claimed to have expended large sums of money which he sought to recover that were false; that at various times when he claimed to have paid money in New York he was in fact in Southampton, Long Island; that the respondent's whole testimony before the referee was evasive, indefinite, and contradictory. The referee sums up his conclusion as to the testimony, viz.:

"Taking all things into consideration, the conclusion is unavoidable that the respondent not only had no authority, direct or implied, to spend the $39,000, or any part thereof, to women to be kept silent, so that their stories should not reach the district attorney, but that in fact he did not pay a considerable part of said sum, as he claims he did, for that purpose, and appropriated a large part of it to his own use."

The referee further finds that the respondent had been paid $103,000; that $30,000 was spent for matters that have in no way been criticised or disputed, and of the remaining $73,000 the sum of about $33,000 was credited on account of fees, leaving a balance of $39,000

in dispute. The conclusion of the referee is that the two charges, to which attention has been called, have been sustained by the evidence, and that the respondent is guilty of professional misconduct in regard to them.

It is quite useless to detail the evidence before the referee or to describe the respondent's disgraceful and shameless conduct in relation to his alleged defense of Thaw and the expenditure of these large sums of money, obtained from Mrs. Thaw for the defense of her son. It presents a sordid, vulgar condition by which many thousands of dollars of this woman's money were squandered in an absolutely useless and unprofessional way, except as they tended to keep witnesses away from the district attorney or to prevent knowledge of facts coming to the district attorney, which in the respondent's opinion would be detrimental to the case of his client. But, so far as they tend to suppress evidence, we agree with the referee that they were in violation of the Penal Law, and, if the payments were actually made as claimed by the respondent, they certainly constituted a misappropriation of his client's money and conduct which violated his professional obligations. That this respondent should go to gambling houses and other places of like kind and use his client's money for dishonest and immoral purposes while pretending to be engaged in advancing his client's interests, is a violation of his professional obligation. The whole story is most disgraceful and dishonorable and one for which there is no possible justification. I think the report of the referee is amply sustained by the evidence and presents a situation which imposes upon the court the clear duty to disbar the respondent.

Upon the hearing before the referee the respondent attempted to justify his payment of these large sums of money to the Merrill woman. The referee in his report doubts the fact of such payment, as it is based solely upon the uncorroborated testimony of the respondent, which the referee evidently concludes is unworthy of belief. He calls attention to the fact that the respondent has not produced the Merrill woman as a witness, although there is evidence that at the time she was available. After the report of the referee was presented, the respondent made application to have the reference reopened and opportunity afforded to produce the testimony of the Merrill woman and the application was granted to the extent of allowing commission to issue to take the testimony of the Merrill woman. Upon the request of the respondent, a commission was issued to take the testimony of the Merrill woman in Boston, where respondent had information that the witness could be found. The respondent was represented at Boston, and when the commission was about to be executed the Merrill woman could not be found, and affidavits were submitted tending to show that she had been in Boston; but, having been charged with commission of a crime, she had disappeared. Thus every opportunity has been given to the respondent to produce the testimony of this witness, and it is not pretended that the respondent has any knowledge of her whereabouts, or, if further time were to be given to him, that he could produce her for examination. Nor do I see how any testimony that she would give could aid the respondent. If she cor-

roborated him as to the various payments which he alleged have been made, it would not in any way relieve him from responsibility for squandering money obtained from Mrs. Thaw and her son, except in so far as it violated the Penal Law. If she failed to corroborate him as to the payments of money he claimed to have made to her, it would be further evidence of his misappropriating his client's money.

It is perfectly clear that this respondent has been guilty of professional misconduct and that he is utterly unworthy to remain a member of an honorable profession, and he is therefore disbarred. All concur.