WILLIAM SIMPSON, Respondent, *v.* COASTWISE LUMBER AND SUPPLY CO., INC., et al., Appellants.

**Malicious prosecution — probable cause — extortion — when evidence sufficient to show that the acts of plaintiff constituted the crime of extortion.**

1. Plaintiff, who had been in the employment of the defendant and had been discharged, or as he says had left voluntarily, began an attack upon his employer by visiting its customers, including the United States government, and informing them that they had been cheated by the company by deliveries of lumber less than that called for by the invoices and receipts. Thereafter, plaintiff claims, he was approached by one of the defendants, an employee of the company, who suggested that the president of the company, also a defendant herein, would pay plaintiff a specified sum to cease his activities and withdraw his charges against the defendant company. He declined

the money at that time, but agreed to meet the president of the company and at that meeting he accepted part of the money, the balance to be paid a few days later, and signed a paper in which he acknowledged such payment and agreed, in consideration thereof and the balance to be paid, not to press any charges in the United States district attorney's office and to retract an affidavit which he had made. Upon plaintiff's receipt of the money he was arrested at the request of the president of the defendant company and thereafter indicted for extortion but subsequently and erroneously, as it appears to this court, was discharged by the Court of General Sessions at the close of the People's case upon his trial. Defendants testified that they did not suggest the bribe giving but that the plaintiff first made threats as to what he would do if he were not paid and then suggested that if he were paid a specified sum he would withdraw the charges and retract all of his statements. After his discharge plaintiff brought this action to recover damages for malicious prosecution. He cannot recover. The defendants are not liable for malicious prosecution if the president of the company had probable cause to believe the plaintiff guilty of the crime of extortion and upon all the evidence he was justified in believing plaintiff to be guilty, at least of an attempt at extortion.

2. Under the evidence, the act of plaintiff, if successful, constituted the crime of extortion. (Penal Law, § 851.) If his act was done to commit the crime but failed in its commission, it was an attempt to commit the crime (Penal Law, § 2), and defendant having been indicted for the crime of extortion might have been convicted of an attempt to commit the crime (Penal Law, § 610), so that the facts justified the president of the company, as a reasonable man, in believing the plaintiff guilty and constituted probable cause, as matter of law, to believe the plaintiff guilty of the crime charged.

3. The plaintiff himself testified that he tried to make the defendant, the president of the company, believe that he was a bribe-taker but with the intent of trying to catch the defendants in committing a crime or in furnishing further evidence for the government in its prosecution against them for crime. Whether this was true or not, and the plaintiff was actuated by honest motives, the president of the company could not know it and if he or a reasonably prudent and careful man would have believed that under all the circumstances the crime of attempted extortion had been committed, he was perfectly justified in bringing about the arrest and prosecution of plaintiff.

*Simpson* v. *Coastwise Lumber & Supply Co.*, 210 App. Div. 861, reversed.

(Argued February 2, 1925; decided February 25, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 25, 1924, affirming a judgment in favor of plaintiff entered upon a verdict.

*Don R. Almy* for Coastwise Lumber and Supply Co., Inc., appellant. The court erred in refusing to dismiss the complaint as against the defendant Coastwise Lumber and Supply Company. (*Craven* v. *Bloomingdale*, 171 N. Y. 439; *Macauley* v. *Starr*, 194 App. Div. 643; *Pollack* v. *S. I. R. T. Co.*, 187 App. Div. 832; *Wolf* v. *United Drug Co.*, 229 N. Y. 537; *Kastner* v. *L. I. R. R. Co.*, 76 App. Div. 323; *Reardon* v. *Erie R. Co.*, 179 App. Div. 374; *Volz* v. *Blackman*, 64 N. Y. 440; *L. S. & M. S. Ry. Co.* v. *Prentise*, 147 U. S. 101.)

*Don R. Almy* and *Benoni B. Gattell* for George T. McQuade, appellant. On the plaintiff's own showing he was guilty of attempted extortion, bribery and compounding a felony; probable cause was, therefore, shown as a matter of law. The fact that the public authorities indicted him for a crime of which he was not guilty did not make the defendants liable for malicious prosecution. (*People* v. *Burkland*, 13 Wend. 597.) Upon the face of it on the plaintiff's own showing three crimes had been committed by him in the presence of two police officers who arrested him. There was, therefore, no false arrest. (*People* v. *Esposito*, 118 Misc. Rep. 867.)

*John J. Curtin* and *Wesley S. Sawyer* for Paul Lagno, appellant. Plaintiff was guilty of bribery under section 379 of the Penal Law. (*Matter of Hartridge*, 162 App. Div. 877.) Plaintiff was guilty of compounding a crime under section 570 of the Penal Law. (*Matter of Hart*, 131 App. Div. 673; *Catskill Bank* v. *Lasher*, 165 App. Div. 548.) Plaintiff was guilty of attempted extortion under sections 851 and 852 of the Penal Law. (*People* v. *Vitusky*,

155 App. Div. 155; *People* v. *Gillette*, 200 N. Y. 276; *People* v. *Thompson*, 97 N. Y. 313.)   There was probable cause as matter of law, and it was error for the court to leave the question of probable cause to the jury. (*Macauley* v. *Starr*, 191 App. Div. 643; *Anderson* v. *Dyer*, 188 App. Div. 712; *Halsey* v. *N. Y. Society*, 191 App. Div. 245; *Carl* v. *Ayers*, 53 N. Y. 17; *Giorgio* v. *Battermen*, 134 App. Div. 139; *Crandell* v. *L. I. R. R. Co.*, 134 App. Div. 268; *Davenport* v. *N. Y. R. R. Co.*, 149 App. Div. 432; *Kutner* v. *Fargo*, 34 App. Div. 317; *Besson* v. *Southard*, 10 N. Y. 236; *Adams* v. *Schwartz*, 127 App. Div. 233.)

*Frank S. Gannon* and *Arthur J. Stern* for respondent. There is ample evidence to sustain the verdict.   (*Race* v. *Krum*, 222 N. Y. 410.)

CRANE, J.   William Simpson, the plaintiff, an ex-policeman, was in the employ of the Coastwise Lumber & Supply Co., Inc., up to July, 1920, when, as the defendant says, he was discharged, or as he says, he left voluntarily. Whichever way it was, he left and immediately thereafter commenced a series of attacks upon his employer by visiting its customers, including the United States government officials (Army Intelligence Bureau at Governor's Island) and informing them that they had been cheated by the lumber company.   He imparted the information that deliveries of lumber were one-third less than the invoices and delivery receipts called for.

George T. McQuade, one of the defendants, was president of the Coastwise Lumber & Supply Co., Inc., and the other defendant, Paul Lagno, was an employee.   The plaintiff's brother-in-law, one Curtis, was vice-president of the company, and had procured the employment of the plaintiff.

On the 14th day of September, 1918, at the instance of George T. McQuade, the plaintiff was arrested, charged

with extortion, held by the grand jury for trial, and thereafter discharged. He has brought this action to recover damages for malicious prosecution and has recovered a judgment which has been affirmed by the Appellate Division, two of the justices dissenting on the ground that the verdict is against the weight of the evidence.

The plaintiff claimed that he was approached by the defendant Lagno who suggested that McQuade would give him $5,000 to cease his activities and withdraw his charges against the defendant corporation. He says that he told Lagno that he did not want the money, but he, Lagno, could keep it. He, however, agreed to meet McQuade, and the night before the meeting made up his mind he would take the money. On the day of the meeting, which was in a restaurant, 17 Battery place, New York city, the plaintiff took from McQuade $500, part payment on the $5,000, the balance of which he was to receive the following Monday. Before receiving the money he signed a paper which Lagno drew up and which read as follows:

"NEW YORK, *September 14th,* 1918.

" In consideration of $500.00 in cash, which receipt of is hereby acknowledged by me from G. T. McQuade, and $4,500.00 in cash to be paid to me not later than 3 P. M. September 16th, 1918, I agree not to press any charges in the U. S. District Attorney's Office in Brooklyn and Army Intelligence Bureau at Governors Island, and retract Weberlovsky affidavit that I have made. I also agree to take care of Mr. F. Bitters and J. Nelson against causing any further trouble on any of those matters. Also to stop any attacks against Neptune Forwarding Company that was started by Brenack or Bohage and I only came in afterward, and I agree to destroy any Coastwise records that I may have. 　　WM SIMPSON

" Witnessed PAUL A. LAGNO 　 　 G. T. McQUADE."

Upon the receipt of the money and at a signal from McQuade, two detectives who were present at McQuade's request, arrested Simpson. To the lawyer for the company, McQuade had reported Simpson's demand and had taken his advice to turn the matter over to the police. Two detectives were thereupon assigned to the case who advised McQuade as to his subsequent moves leading to this arrest of Simpson. On McQuade's complaint in the Magistrate's Court and after a hearing, Simpson was held for the grand jury, indicted by the grand jury, and subsequently discharged by the court upon his trial in General Sessions at the close of the People's case. Why, if the evidence were the same in the General Sessions as it was in this case, he should have been discharged without having the question of his guilt submitted to the jury, is beyond my understanding.

The defendants' version of this affair differs from that of the plaintiff substantially in only one particular. The defendants claim that McQuade and Lagno were not the first to suggest bribe giving, but that the plaintiff Simpson first made threats as to what he would do if he were not paid and then subsequently suggested to Lagno that for $5,000 he would withdraw his charges and retract all his statements. All the other details from this point on are in the main as given by the plaintiff.

We, therefore, have these facts agreed upon by all the parties, that is, the things that I am now to detail are the actual things that happened, and which we must take as the basis upon which to build our law:

Simpson having been in the employ of the lumber company left its employ on July sixteenth or thereabouts. After leaving, he visited the company's customers making charges against his former employer of fraud and deception. He gave information to the United States government — officials at Governor's Island — that the lumber company had cheated in its deliveries of lumber

32

[239 N. Y. 492]   Opinion, per Crane, J.   [Feb.,

upon government contracts. He agreed with McQuade, through Lagno, to take money, $5,000. For this money he was to withdraw his charges and retract his statements and cease his activities against the corporation. He met McQuade for the purpose of taking this money. He wanted McQuade to believe that he was a bribe taker and he acted as if he were the real thing. McQuade paid him $500 on the agreement, and Simpson signed the paper, a copy of which is above given. Thereupon Simpson was arrested, charged with extortion.

" Extortion " is defined in article 80 of the Penal Law as follows:

" Extortion is the obtaining of property from another, or the obtaining the property of a corporation from an officer, agent or employee thereof, with his consent, induced by a wrongful use of force or fear, or under color of official right.

" Fear, such as will constitute extortion, may be induced by an oral or written threat:

" To accuse him   *   *   *   of any crime." (Secs. 850, 851.)

" An act, done with intent to commit a crime, and tending but failing to effect its commission, is ' an attempt to commit that crime.' " (Penal Law, sec. 2.) Section 610 of the Penal Law provides: " Upon the trial of an indictment, the prisoner may be convicted of the crime charged therein, or of a lesser degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime."

A copy of the indictment found against Simpson has not been included in the case on appeal. It is stated in the briefs and in the testimony that the charge was extortion. If the crime itself could not be made out because McQuade was not actually put in fear, the attempt nevertheless to commit the crime was made by Simpson, if McQuade's story were true, and the jury did not believe Simpson as to his intent.

1925.]  Opinion, per Crane, J.  [239 N. Y. 492]

If for any reason not explainable in this record, the crime charged in the indictment had failed, it would appear from McQuade's testimony and that of his witnesses that the crime of bribery of a witness had been committed or attempted (Penal Law, sec. 379; *Matter of Hartridge*, 162 App. Div. 877; *People* v. *Maynard*, 151 App. Div. 790), and the judge of General Sessions, even if dismissing the indictment for extortion should have held the prisoner for the grand jury for the crime of bribery or attempted bribery on the testimony given in open court.

Simpson had accused McQuade and the corporation of a crime. He threatened to press his charges to save himself as he said from going to jail. He offered to withdraw the charges and to declare their falsity for money. He took the money and signed a written promise to do as he had agreed.

The only dispute between the plaintiff and the defendants is over the instigator of the crime. The plaintiff says that Lagno and McQuade suggested it; McQuade, his witnesses, and the circumstances point to the plaintiff as the one who suggested the bribe.

As stated by the trial judge, if the defendants' version of this affair be correct, the plaintiff was guilty at least of an attempt at extortion.

The trial justice and the jury were confronted with the question of probable cause. The defendants were not liable for malicious prosecution if McQuade had probable cause to believe the plaintiff guilty. This was not a question of the plaintiff's guilt but whether the facts as presented to McQuade would lead a reasonable man to believe the plaintiff guilty. The trial justice in his charge to the jury stated to them very clearly that McQuade was justified in acting upon appearances; that he could only act upon those things which he saw or those things which were told to him, that is, the things which he knew, or could have known. And continuing, the judge further instructed the jury that McQuade could not know what

**500**  SIMPSON *v.* COASTWISE LUMBER & SUPPLY CO.

Simpson was thinking about, what Simpson had in his mind, or what Simpson's intention and purpose were. Of course this is a correct statement and explanation of the law. If from what McQuade knew, from what he saw and heard, a reasonable man would have believed the plaintiff to be guilty, the defendants could not be held in damages for malicious prosecution.

The plaintiff himself states that he tried to make McQuade believe that he was guilty. He acted he said as though he was a bribe-taker and wanted McQuade to believe it. He virtually concedes that all the appearances and his statements would indicate that he was a bribe-taker. Only one thing prevented him from being guilty of being a bribe-taker, and that was his intent and mental reservation. He says that in acting as a bribe-taker he was trying to catch McQuade and the defendants in committing a crime or in furnishing further evidence for the government in its prosecutions against them for crime. How was McQuade to know this mental reservation, this attitude of mind and purpose upon the part of the plaintiff? It stands to reason that even if McQuade were guilty of bribe-giving he would not attempt to bribe a man whom he thought, or had reason to believe, was acting as a spy. Ordinary sense suggests that McQuade at least believed that Simpson was dealing as an actual extortioner or bribe-taker. The plaintiff in his case offers no evidence to suggest that a reasonably prudent man acting in McQuade's place would not have thought and believed the plaintiff guilty of the things he apparently attempted to do. The learned trial judge so understood this case, for he charged the jury as follows: " Even if Simpson was actuated by honest motives and McQuade didn't know that, because he is not a mind reader, of course, if when he got to the restaurant, or if when he was arranging for this transaction, he or a reasonably prudent and careful man would have believed that under all the circumstances the crime of attempted

extortion had been committed, he was perfectly justified in bringing about that prosecution."

In a case of malicious prosecution I suppose a plaintiff is not obliged to rest solely upon his discharge in the criminal court to sustain his innocence. He may go further and prove his innocence of the crime charged against him. So in this case it was probably competent for the plaintiff to testify that he did not intend to take a bribe or to extort money, and that in taking the money he did it for an innocent purpose. Such evidence, however, bears only upon his innocence. It has no bearing upon the question of probable cause. The persons making the accusation were, and are to be charged only with such knowledge as they could gain, and not with the mental attitude and reservations or purposes of the accused unless something said or done made these manifest.

The plaintiff's attitude throughout this entire case is that he acted in such a way as to make McQuade believe he were guilty and it is now a little inconsistent to give him damages because he succeeded. If he represented himself as a rascal guilty of crime, the law had better leave him there and not reward him because he was taken at his word.

The defendants (for the purposes of this case we will say the defendants) charged the plaintiff with the commission of extortion or attempted extortion. So far as the facts appear from this record they were justified, at least they had probable cause as a matter of law to believe the plaintiff guilty as charged, and there was no question of fact or inferences to be drawn from the facts upon this point to be left to the jury. The trial court should have dismissed the complaint.

The judgments appealed from should be reversed and complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, ANDREWS and LEHMAN, JJ., concur; McLAUGHLIN, J., absent.

Judgments reversed, etc.