## BIDDLE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 28, 1907.)

### No. 1,463.

1. CRIMINAL LAW—JURISDICTION—UNITED STATES COURT FOR CHINA.

The object of Act June 30, 1906, c. 3934, 34 Stat. 814 [U. S. Comp. St. Supp. 1907, p. 797], creating the United States Court for China, and of the treaty under which it was created, in so far as that court is given criminal jurisdiction, was to secure to American citizens residing or sojourning in China and there charged with crime the benefit of the principles of the laws of the United States relating to the trial of persons accused of crime; but the statute at the same time makes such citizens subject to punishment for acts made criminal by any law of the United States or for acts recognized as crimes by the common law.

2. SAME—OFFENSES PUNISHABLE—OBTAINING MONEY BY FALSE PRETENSES.

The provisions of such statute, making the common law applicable to criminal offenses committed by American citizens in China, are to be construed as referring to the common law in force in the several American colonies at the time of their separation from England, and this in-

cluded not only the ancient common or unwritten law, but also statutes which had theretofore been passed amendatory of or in aid of the common law, among which was St. 30 Geo. II, c. 24, enacted in 1757, creating the offense of obtaining money or goods under false pretenses, and the subsequent amendments thereto.

3. SAME.

In view of the legislation of Congress making the obtaining of money or property by false pretenses a crime in Alaska and the District of Columbia and in other territory subject to the criminal jurisdiction of the United States, such act is an offense against the laws of the United States, within the meaning of Act June 30, 1906, c. 3934, 34 Stat. 814 [U. S. Comp. St. Supp. 1907, p. 797], conferring jurisdiction upon the United States Court for China, and an American citizen guilty of the commission of such act in China is subject to trial and punishment therefor by that court.

4. FALSE PRETENSES—ELEMENTS OF OFFENSE—NATURE OF PRETENSES.

To constitute the crime of obtaining money under false pretenses, the alleged false representation must be of some past or existing fact, and an information charging that a defendant obtained money from persons named as rental for a building, by means of false representations that the municipal authorities would permit gambling games to be played therein during a race meeting to be held in the future, is insufficient to charge an offense.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, §§ 5–12.]

Appeal from the United States Court for China.

Edwin H. Lamme and Francis Ellis, for appellant.

Robert T. Devlin, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

DE HAVEN, District Judge. This is an appeal by the defendant from a judgment of the United States Court for China, by which he was convicted of the crime of obtaining money under false pretenses, and sentenced to imprisonment for the term of one year in the jail at Shanghai.

It is claimed by the appellant: First, that the court below was without jurisdiction to try him for such alleged crime, because the act of obtaining money or goods by false pretenses was not an offense at common law, and is not made a crime by the laws of the United States; and, second, that the evidence was not sufficient to warrant his conviction.

1. The United States Court for China was created by Act June 30, 1906, c. 3934, 34 Stat. pt. 1, p. 814 [U. S. Comp. St. Supp. 1907, p. 797], and by section 1 of that act was given "exclusive jurisdiction in all cases and judicial proceedings whereof jurisdiction may now be exercised by United States consuls and ministers by law and by virtue of treaties between the United States and China, except in so far as the said jurisdiction is qualified by section two of this act." Section 4 of the same act provides:

"The jurisdiction of said United States court, both original and on appeal, in civil and criminal matters, and also the jurisdiction of the consular courts in China, shall in all cases be exercised in conformity with said treaties and

the laws of the United States now in force in reference to the American consular courts in China, and all judgments and decisions of said consular courts, and all decisions, judgments, and decrees of the United States court, shall be enforced in accordance with said treaties and laws. But in all such cases when such laws are deficient in the provisions necessary to give jurisdiction or to furnish suitable remedies, the common law and the law as established by the decisions of the courts of the United States shall be applied by said court in its decisions and shall govern the same subject to the terms of any treaties between the United States and China."

The law in relation to the jurisdiction of consular courts at the date of the passage of the act creating the United States Court for China is found in section 4086 of the Revised Statutes [U. S. Comp. St. 1901, p. 2769], and is as follows:

"Jurisdiction in both civil and criminal matters shall, in all cases, be exercised and enforced in conformity with the laws of the United States, which are hereby, so far as is necessary to execute such treaties, respectively, and so far as they are suitable to carry the same into effect, extended over all citizens of the United States in those countries, and over all others to the extent that the terms of the treaties, respectively, justify or require. But in all cases where such laws are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies, the common law and the law of equity and admiralty shall be extended in like manner over such citizens and others in those countries."

The United States, by its treaty with China, acquired extraterritorial jurisdiction in civil controversies between its citizens residing in China, and in respect to all crimes committed by its citizens residing there, and in the statutes above referred to, provided tribunals to exercise such jurisdiction, "in conformity with the laws of the United States," and, when these laws "are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies," then in accordance with the common law. The object of the treaty and the intention of Congress, in creating the United States Court for China, in so far as that court is given criminal jurisdiction, was to throw around American citizens residing or sojourning in China, and there charged with crime, the beneficent principles of the laws of the United States relating to the trial of persons charged with crime—the rules of evidence, the presumption of innocence, the degree of proof necessary to convict, the right of the accused to be confronted with witnesses against him, exemption from being compelled to criminate himself, etc. But, while securing to them these privileges, the statute at the same time, made them subject to punishment for acts made criminal by any law of the United States, or for acts recognized as crimes under the common law.

This brings us to the consideration of the question whether obtaining money or goods by false pretenses is an offense which may be thus punished, if committed by an American citizen in China. This particular kind of cheating was not a crime under the ancient common law. It was first so declared in the year 1757 by St. 30 Geo. II, c. 24. Bishop on Criminal Law (3d Ed.) vol. 2, § 392. "Under this statute for the first time the crime ceased to depend on the particular kind of pretense used; the statute being couched in terms broad enough to include the use of any false pretense whatever, although, as will appear later, the judges, in construing the statute,

excepted certain classes of pretenses from it. It was this statute that created the crime now commonly known as obtaining goods un-der false pretenses. Several statutes have been enacted in England since the statute of 30 Geo. II to supply defects found therein, but its general provisions, in so far as they defined the crime, remain un-changed." 19 Cyc. 387.

If the statute of 30 Geo. II, and those amendatory of it, which were in force at the date of the separation of the American colonies from the mother country, are to be considered as a part of the com-mon law to which Congress referred in the enactment above quoted, the jurisdiction of the court over the offense of obtaining money un-der false pretenses would be undoubted; and we are of opinion that in making the common law applicable to offenses committed by Ameri-can citizens in China, and the other countries with which we have similar treaties, Congress had reference to the common law in force in the several American colonies at the date of the separation from the mother country, and this included not only the ancient common law, the lex non scripta, but also statutes which had theretofore been passed amendatory of or in aid of the common law. Thus Mr. Bishop, in his work on Criminal Law (section 155) says:

"The rule is familiar to the legal profession that colonists to an uninhabit-ed country carry with them the laws of their mother country, as far as ap-plicable to their new situation and circumstances; and that, in their new home, the laws thus taken with them, whether in the mother country they were written or unwritten, are regarded as unwritten, or common law."

And in the second edition of Cooley's Constitutional Limitations, (page 25), the author of that great work says:

"The colonies also had Legislatures of their own, by which laws had been passed which were in force at the time of the separation, and which re-mained unaffected thereby. When therefore they emerged from the colonial condition into that of independence, the laws which governed them consisted: First, of the common law of England, so far as they had tacitly adopted it as suited to their condition; second, of the statutes of England, or of Great Brit-ain, amendatory of the common law, which they had in like manner adopted; and, third, of the colonial statutes. The first and second constituted the American common law, and by this in great part are rights adjudged and wrongs redressed in the American states to this day."

But in holding that the court below had jurisdiction of the informa-tion upon which the defendant was tried, it is not necessary for us to rest our decision entirely upon the proposition that obtaining money or goods under false pretenses is an offense at common law, within the meaning of the statute conferring jurisdiction upon the United States Court for China, as we are clearly of opinion that such an act is a crime under the laws of the United States.

It is true, there is no general statute applicable to every state in the Union, making this an offense against the United States; nor could there be, in view of the fact that under our system of govern-ment the right to punish for such acts committed within the political jurisdiction of the state is reserved to the several states. But in legis-lating for territory over which the United States exercises exclusive legislative jurisdiction, Congress has made the act of obtaining mon-ey under false pretenses a crime. Thus, in section 54 of title 1, pt. 1,

of the act passed March 3, 1899 (chapter 429, 30 Stat. 1260), entitled, "An act to define and punish crimes in the district of Alaska and to provide a code of criminal procedure for said district," Congress has enacted that obtaining money or property from another by any false pretense shall constitute a crime, subjecting the offender to punishment by imprisonment in the penitentiary not less than one nor more than five years. So, also, under section 842 of the act of March 3, 1901, entitled "An act to establish a code of law for the District of Columbia," obtaining from any person anything of value by means of false pretenses is made a crime, and, where the value of the property so secured is $35 or upwards, subjects him to imprisonment not less than one year nor more than three years; or, if less than that sum, to a fine not more than $200, or imprisonment for not more than six months, or both. Chapter 854, 31 Stat. 1326.

In addition to these statutes, section 2 of the act of July 7, 1898 (chapter 576, 30 Stat. 717 [U. S. Comp. St. 1901, p. 3652]), which is, in substance, a re-enactment of section 5391, Rev. St., provides:

"That when any offense is committed in any place, jurisdiction over which has been retained by the United States or ceded to it by a state, or which has been purchased with the consent of a state for the erection of a fort, magazine, arsenal, dockyard or other needful building or structure, the punishment for which offense is not provided for by any law of the United States, the person committing such offense shall, upon conviction in a circuit or district court of the United States for the district in which the offense was committed, be liable to and receive the same punishment as the laws of the state in which such place is situated now provide for the like offense when committed within the jurisdiction of such state, and the said courts are hereby vested with jurisdiction for such purposes; and no subsequent repeal of any such state law shall affect any such prosecution."

Under this statute, any act committed in any place under the jurisdiction of the United States, if made an offense by the laws of the state in which such place is situate, when committed elsewhere in the state, is an offense agianst the United States, and punishable as in the state law provided. Sharon v. Hill (C. C.) 24 Fed. 731; U. S. v. Wright, Fed. Cas. No. 16,774; U. S. v. Pridgeon, 153 U. S. 48–53, 14 Sup. Ct. 746, 38 L. Ed. 631.

At the date of the passage of the act of July 7, 1898, just quoted, the act of obtaining money or goods by false pretenses was made a crime by the laws of most of the states of the Union, and is, therefore, under this statute, also made a crime against the United States, in all places over which the United States exercises exclusive legislative jurisdiction, within the several states, having laws providing for the punishment of such an act as a crime.

In view of the legislation of Congress to which we have referred (the acts relating to Alaska and the District of Columbia, and the statute of July 7, 1898), our conclusion is that obtaining money or goods under false pretenses is an offense against the laws of the United States, within the meaning of the statute conferring jurisdiction upon the United States Court for China, and that an American citizen guilty of the commission of such an act in China is subject to trial and punishment therefor by that court.

2. But we are of opinion that the information upon which defend-

ant was convicted does not state facts sufficient to constitute the of--
fense of obtaining money under false pretenses. The information,.
so far as is necessary to be here set out, charges that the defendant,
"on or about the 31st day of October, 1906, in Shanghai, China, un-
lawfully and knowingly did falsely pretend to Woo Ah Sung, Zung
Yu Young, Ng Sih Yiek, and Sz Yung that the municipal authorities
of the, international settlement of Shanghai, China, would allow and'
permit in the building known as Nos. 4 and 5 Mohawk Road, Shang-
hai, China, * * * Chinese gambling games to be played during
the autumn race meeting of 1906, in Shanghai, China, which pre-
tenses were false, as the said C. A. Biddle then and there well knew,
and by said false pretenses the said C. A. Biddle, with intent to de-
fraud, unlawfully did obtain from the said Woo Ah Sung, Zung Yu
Dong, Ng Sih Yiek, and Sz Yung the sum of Tls. 3,000.00 Shanghai
Sycee as rent for the said premises to be used for the said gambling
games."

It will be noticed that the alleged false pretenses relate wholly to
some future action of the municipal authorities of the international
settlement of Shanghai in permitting Chinese gambling to be played
during the autumn race meeting of 1906, in Shanghai. There is no
averment that defendant made any false representation as to any
existing fact, or past fact, and without such an averment the charge
of obtaining money under false pretenses cannot be sustained. In
order to constitute the crime of obtaining money under false pre-
tenses, the alleged false representation must be of some past or exist-
ing fact. Says Mr. Bishop (section 401, vol. 2), in his work on Crim-
inal Law (3d Ed.) :

"Both in the nature of things, and in actual adjudication, the doctrine is
that no representation of a future event, whether in the form of a promise
or not, can be a pretense, within the statute, for the pretense must relate either
to the past or the present."

This statement is well sustained by decided cases. People v. Mil-
ler, 169 N. Y. 339, 62 N. E. 418, 88 Am. St. Rep. 546; Cook v. State,
71 Neb. 243, 98 N. W. 810. Our attention has not been called to
any case which holds to the contrary. People v. Wasservogle, 77 Cal.
173, 19 Pac. 270, which is cited by the learned attorney for the United
States, is in harmony with the rule as we have stated it. In that
case the defendant obtained money upon a draft drawn by him; he
falsely stating at the time that he had credit with the firm upon which
it was drawn, for the amount of the draft, and that the draft would
be honored. In that case it will be perceived there was the false rep-
resentation of an existing fact, to wit, that the defendant had an ex-
isting credit to the amount of the draft with the firm upon which the
draft was drawn, and the court, in its decision upholding the convic-
tion in that case, said:

"It is true that, to come within the statute, a representation must be of some
fact, past or present; but the statement of the defendant that he had credit
with the firm named for the amount of the draft, and that the firm would
honor the draft, when he knew that he had no credit with the firm, and that
the draft would not be honored or paid, was sufficient."

Passing from the information to a consideration of the evidence: It was wholly insufficient to justify the conviction of defendant. It appears that on May 29, 1906, the defendant in his own name, but in fact acting for the Hotel Metropole Company, Limited, entered into a contract with the firm composed of the Chinese named in the information, whereby the defendant "let during the four days of the autumn race meeting of 1906 the whole of the second floor and verandah of the building Nos. 4 and 5 Mohawk Road, for the purpose of running Chinese tables for the sum of taels six thousand—Tls. 6,000—fifteen hundred taels of which to be paid on the signing of the contract by the said Yik Che as bargain money, the balance to be paid on or before the first day of November, 1906. This contract to be null and void should the municipal authorities prohibit the running of the said building as a Chinese grand stand during said race meeting and the above mentioned fifteen hundred taels bargain money be returned to the said Yik Che."

It is very clearly shown by the evidence that, when the payments were made under this contract, the parties knew that gambling was not then permitted in Shanghai, and would not be during the approaching autumn race meeting of 1906, unless the municipal authorities should in some manner remove the prohibition. There was also some evidence tending to show that the council had refused, before the making of the above lease, to give its consent to the suspension of the ordinance against gambling in Shanghai, and that this fact was known to the defendant and not communicated by him to the lessees; and that he and others were endeavoring to get the council to recede from its position against gambling, during the time the several payments were made under this lease; but there was no evidence that defendant ever made any express or implied representation that the ordinance against gambling had been repealed or suspended. There was no false representation of any existing fact.

The judgment is reversed, with directions to discharge the defendant.