## State *vs.* Francis H. McMahon.

FEBRUARY 6, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. In this case a jury found defendant guilty of being a common cheat. The definition of a cheat as given to the jury by the trial justice and to which defendant took exception was "Cheating is the fraudulent obtaining of the property of another by any deceitful or irregular practice not amounting to a felony which is of such a nature that it directly affects or may directly affect the public at large." The language except for the omission of reference to a token is substantially that in 2 Brill. Cyc. Crim. Law, § 1224, p. 1861.

Defendant contends, first, that the verdict was against the evidence and second, that, granting the cheating of sundry people, the evidence fails to show the use of any false token or symbol without which he asserts there can be no

criminal offense of cheating and that on this account the trial court erred in refusing defendant's motion that the jury be directed to return a verdict of not guilty.

Upon the evidence the jury was warranted in finding that defendant intentionally defrauded at least six definite people. Defendant's business as represented to the public and the frequent use and success of his fraudulent plan render unnecessary any consideration of the question whether this was a public wrong or a private fraud and whether it was sufficiently habitual to be properly designated as common. The facts and the legitimate inferences therefrom were that defendant held himself out to the public as a purchaser of second-hand automobiles; that in six instances between August and October, 1926, he obtained automobiles by making to the seller a small cash payment and in addition thereto giving his note payable in sixty or ninety days for the balance of the agreed purchase price; that to one seller he represented the note to be a check which could be cashed at once; that the total of such notes amounted to approximately $1,800, and that at the time of giving said notes defendant intended not to pay them when they fell due. This intention was fairly inferable from defendant's entire lack of assets, present or prospective, his failure to keep any record of the notes which he gave, his ceasing to keep a bank account shortly before giving them and his inability to state anything about the number of notes or to whom he had given them. It was further supported by his departure from the State about the time the notes fell due, his efforts to get some of the defrauded parties not to appear in court and his general evasiveness upon the witness stand.

This State is committed to the doctrine that in an action for deceit intention not to meet a future obligation is a question of fact to be submitted to the jury and that misrepresentation of a present state of mind as to such intention is a false representation of an existing fact. *Swift* v. *Rounds*, 19 R. I. 527; *Dooley* v. *Stillson*, 46 R. I. 332, at

337; 26 C. J. p. 1093, § 26. The rule is equally applicable in this criminal prosecution for cheating. Any other than a verdict of guilty under the law as given to the jury would have been a miscarriage of justice. There is no merit to the contention that the verdict was against the evidence.

To decide whether the defendant's motion to direct a verdict of not guilty should have been granted it is necessary to examine the requisites of the common law offense of cheating. This offense was recognized in *State* v. *Brown*, 4 R. I. 528. So far as we have found it never has been and now is not specifically defined in Rhode Island statutes though there is a punishment provided for a "common cheat." G. L. 1923, Ch. 399, Sec. 24.

The earliest law contains few definitions but numerous examples of criminal cheating. Blackstone (Lewis ed.) Bk. 4, § 1556, p. 158, says: "If any man defrauds another of any valuable chattels by color of any false token, counterfeit letter or false pretenses he shall suffer such punishment by imprisonment," etc. Bishop on Criminal Law, Vol. 2, Ch. 10, treats of "Cheats at Common Law" and refers (p. 105) to Hawkins' definition of cheating as "Deceitful practices in defrauding . . . another . . . by means of some artful device contrary to the plain rules of common honesty." The earlier cases clearly required the use of a false token or symbol to render the falsifier guilty of the misdemeanor of cheating. 2 Wharton Crim. Law, Ch. 31, p. 1573; 2 East P. C. pp. 816 to 826; *Middleton* v. *State*, 23 S. C. L. 275. None of the authorities held the wrongdoer's own fictitious check or note to be a token. It was merely a written false pretense against which the defrauded person should have been on guard; *Rex* v. *Jackson*, 3 Campbell, 370 (cheque); *Rex* v. *Lara*, 6 T. R. 565 (note); *Com.* v. *Warren*, 6 Mass. 72 (note); 2 Brill Cyc. Crim. L. § 1231, p. 1871; but if a writing were that of a person other than the accused it was a token. *Hale's Case*, 2 East P. C. 825.

In line with the early cases holding that the false representation had to be by a token "in other men's names" but

adding the element of cheating by a *privy* token, came the Statute of 33 Henry VIII (1541), Ch. 1, §§ 1 and 2. This statute is recognized everywhere as part of the American common law. *Com.* v. *Warren, supra.* The subtleties of the early decisions still prevailed and the Statute of 30 George II, Ch. 24 (1757), was enacted which created the offense of cheating by false pretenses. This statute covered cheating either by oral or written falsehoods. It did not require a token. Bish. Crim. L. Vol. 2, § 144; 2 East P. C. 826. It displayed advancing standards of honesty in public dealings. The terms of this statute were general and, says 2 East P. C., at p. 831: "These two statutes (Hen. VIII and Geo. II) were thought to embrace every species of cheat not guarded against by the common law," and again at p. 834: "This statute (Geo. II) extending the offense to cheating by means of false pretenses is on all hands admitted to be the introduction of new law." *Rex* v. *Villeneuve,* 2 East P. C. 830 (defendant convicted as a cheat on oral lie); *Witchell's Case,* p. 830 (written lie).

This court in *State* v. *Bacon,* 27 R. I. 252, at 257, said a token was required at common law. Examination of the nature of the offense of cheating shows that the court there referred to the common law of Great Britain, as it existed when the American colonies were settled. The common law of the several states of the United States is not identical therewith. 12 C. J. 188, 189. In Rhode Island it includes applicable statutory modifications of the early common law made by Parliament prior to the Revolution. See Colonial Digest of 1767, quoted in *State* v. *Eastern Coal Co.,* 29 R. I. 254, at 261. 12 C. J. 193, note 27. In this respect we differ from Massachusetts where the common law dates from the first settlement. *Com.* v. *Warren, supra.* Hence, in Rhode Island the criminal offense of cheating at common law is the offense as it existed in England after the Statute of 30 George II. It does not require the use of a token and there was no error in the charge of the trial court or in its refusal to direct a verdict.

Apart however from the common law we think defendant under our statutes was guilty of the offense charged.

General Laws of Rhode Island 1923, Ch. 397, Sec. 15, makes it larceny to obtain property by false pretenses. The statute contains no requirement that such pretenses be in writing. In its present form it first appears in Public Laws of Rhode Island 1915, Ch. 1258, Sec. 10 (at p. 202), amending G. L. 1909, Ch. 345, Sec. 15. It closely resembles in its terms the Act of 30 George II, *supra*. The first appearance of the statute making it larceny to obtain property by false pretenses is in P. L. 1844, p. 383, Sec. 37. It continued in substantially the same form to G. L. 1909, Ch. 345, Sec. 15. See G. L. 1896, Ch. 279, Sec. 15; Pub. Stat, 1882, Ch. 242, Sec. 15; Gen. Stat. 1872, Ch. 230, Sec. 14; Rev. Stat. 1857, Ch. 214, Sec. 14. By these statutes the early common law crime of cheating could be treated as more than a misdemeanor. *Brady* v. *Norwich Union Fire Ins. Soc.*, 47 R. I. 416, at 418, but, as under the Statute of Henry VIII, the false pretense had to be "in writing or by any privy or false token." As it has stood since 1915 our statute like that of George II includes obtaining of property by any false pretenses. The elements of our present statutory crime of larceny in obtaining property by false pretenses and the English crime of cheating as existing in 1776 have been substantially the same since 1915. Violation of the statute is no less cheating because it may be charged as larceny. Under our statute, therefore, as well as under our common law, the State was entitled to prosecute defendant as a cheat and seek his punishment as a misdemeanant rather than to prosecute upon the more serious offense of larceny and ask punishment therefor.

Finding no error in the action of the trial court defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Charles P. Sisson, Attorney-General, Sigmund W. Fischer, Assistant Attorney-General,* for State.

*Thomas J. Dorney, James F. McCartin,* for defendant.