CHAPLIN v. UNITED STATES.

No. 9042.

United States Court of Appeals
District of Columbia.

Argued Jan. 18, 1946.

Decided April 15, 1946.

EDGERTON, Associate Justice, dissenting.

Mr. J. H. Bilbrey, of Washington, D. C., with whom Mr. Frank J. Kelly, of Washington, D. C., was on the brief, for appellant.

Mr. Arthur J. McLaughlin, Assistant United States Attorney, of Washington, D. C. with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee. Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before GRONER, Chief Justice, and EDGERTON and CLARK, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a conviction under the first count of an indictment charging appellant and his wife with obtaining money by false pretenses.[1]

Of the several points raised by appellant we think one to be of controlling significance. He urges that the indictment failed to charge a crime because the one statement which he is alleged to have made relating to a subsisting fact was not traversed and no evidence was introduced to prove that the one statement was false.

To examine this contention we turn to the indictment. It is there charged that appellant and his wife, co-defendant below, "* * * with intent to defraud, feloniously did pretend and represent to one Violette McMullen, then and there being, that they, the said Sydney A. Chaplin and the said Dorothy Chaplin, were engaged in the wine and liquor business in Alexandria, Virginia, and that if she, the said Violette McMullen, would advance certain money, they, * * * *would* purchase certain liquor stamps with said money and * * * *would* return * * * any money so advanced * * *." (Italics added.) In the traversing clause, it is charged that the defendants "* * * would not purchase such liquor stamps and would not return * * * the money advanced * * * as they * * * well knew."

It appears from the indictment that the prosecution's case was necessarily founded on the defendants' *intention*, at the time of acquiring the money, not to do two things promised: (1) buy stamps, and (2) repay the money. Both of these promises relate to things the defendants were to do in the future. The prosecution did not prove that the defendants misrepresented their business connection. On the contrary, it appears from the record that the appellant and his wife were in the liquor busi-

---

[1] D.C.Code 1940, § 22—1301.

ness, that they did own a large quantity of wine for which state stamps were required and that they did buy some small amount of tax stamps. The question for our decision comes down to whether the "present intention" of the defendants not to return the money and not to buy the stamps as they said they would relates to a "present or past existing fact" such as will support a conviction for the crime of false pretenses. The rule stated in Wharton's Criminal Law, 12th Ed., § 1439, is that: "A false pretense, under the statute, must relate to a past event or existing fact. Any representation with regard to a future transaction is excluded. Thus, for instance, a false statement, that a draft which the defendant exhibits to the prosecutor has been received from a house of good credit abroad, and is for a valuable consideration, on the faith of which he obtains the prosecutor's goods, is within the law; a promise to deposit with him such a draft at some future time, though wilfully and intentionally false, and the means of prosecutor's parting possession with his property, is not. So a pretense that the party would do an act that he did not mean to do (as a pretense that he would pay for goods on delivery) was ruled by all the judges not to be a false pretense under the Statute of Geo. II., and the same rule is distinctly recognized in this country, it being held that the statement of an intention is not a statement of an existing fact." We think the great weight of authority sustains this statement of the rule and compels us to answer the question in the negative.

In its brief, the government was most candid on this point, stating that Commonwealth v. Althause, 207 Mass. 32, 93 N. E. 202, 31 L.R.A.,N.S., 999, from which a quotation of dictum was taken did not represent the weight of authority. The same may be said for the other two cases cited to support the prosecution's position on the point.[2] It appears from a study of these cases that the courts concerned found no difficulty in applying the rule on "intention"

which has long been used in actions at law for fraud and deceit.[3] We think it unnecessary to discuss the advisability of transplanting this concept to criminal actions. There is a vast difference between subjecting a defendant to criminal penalties and providing for the redress of wrongs through civil actions.

A majority of the courts having this problem placed before them have not subscribed to the theory that "intention", as manifest by false and misleading promises, standing alone, is a *fact* in the sense required for a conviction on the charge of false pretenses. For illustrative cases see:[4] Biddle v. United States, 9 Cir., 156 F. 759; State v. Ferris, 171 Ind. 562, 86 N.E. 993, 41 L.R.A.,N.S., 173; People v. Orris, 52 Colo. 244, 121 P. 163, 41 L.R.A., N.S., 170; State v. Howd, 55 Utah 527, 188 P. 628; People v. Daniels, 25 Cal. App.2d 64, 76 P.2d 556; Willis v. State, 34 Ariz. 363, 271 P. 725; Chilton v. People, 95 Colo. 268, 35 P.2d 870; Lamb v. State, 202 Ark. 931, 155 S.W.2d 49; State v. Doudna, 226 Iowa 351, 284 N.W. 113; Stephens v. Milikin, 35 Ga.App. 287, 133 S.E. 67; State v. Craft, 344 Mo. 269, 126 S.W.2d 177; Harris v. State, 125 Ohio St. 257, 181 N.E. 104; People v. Widmayer, 265 Mich. 547, 251 N.W. 540; Vaughan v. State, 36 Ga.App. 674, 137 S.E. 854; Id., 36 Ga.App. 675, 137 S.E. 854; McKee v. State, 26 Ala.App. 208, 155 So. 888; People v. Blanchard, 90 N.Y. 314; Cf. State v. Wren, 333 Mo. 575, 62 S.W.2d 853; State v. Ritchie, 172 La. 942, 136 So. 11.

Not only is the rule deeply rooted in our law, but moreover, we think the reasons upon which it is founded are no less cogent today than they were when the early cases were decided under the English statute cited by Wharton, supra. It is of course true that then, as now, the intention to commit certain crimes was ascertained by looking backward from the act and finding that the accused intended to do what he did do. However, where, as here, the act complained of—namely, failure to repay

---

[2] People v. Ames, 61 Cal.App.2d 522, 143 P.2d 92; State v. McMahon, 49 R.I. 107, 140 A. 359. See also Smith v. Fontana, D.C., 48 F.Supp. 55, 60.

[3] See: 51 A.L.R. 46, 63; 68 A.L.R.

635, 637; 91 A.L.R. 1295, 1297; 125 A. L.R. 879, 881.

[4] For other cases see 24 A.L.R. 401, 52 A.L.R. 1170.

money or use it as specified at the time of borrowing—is as consonant with ordinary commercial default as with criminal conduct, the danger of applying this technique to prove the crime is quite apparent. Business affairs would be materially incumbered by the ever present threat that a debtor might be subjected to criminal penalties if the prosecutor and jury were of the view that at the time of borrowing he was mentally a cheat. The risk of prosecuting one who is guilty of nothing more than a failure or inability to pay his debts is a very real consideration. It is not enough to say that if innocent the accused would be found not guilty. The social stigma attaching to one accused of a crime as well as the burdens incident to the defense would, irrespective of the outcome, place a devastating weapon in the hands of a disgruntled or disappointed creditor.

The business policy, as well as the difficulties and dangers inherent in a contrary rule are illustrated by the earlier English cases. In Rex v. Goodhall, 1821, Russ. & R.C.C. 461, the accused was found to have obtained a quantity of meat, promising to pay for it but not so intending. In reversing the jury's verdict of guilty the court said: "It was merely a promise for future conduct, and common prudence and caution would have prevented any injury arising from the breach of it." Again, in Reg. v. Oates, 1855, Dears C.C. 459, 6 Cox C.C. 540, where the accused was charged with making a fraudulent overcharge for work performed the court discharged the prisoner saying: "Is a shopkeeper who knowingly charges for an article more than it is worth, liable to an indictment under this statute? * * * to hold the statute applicable to such a case would shake many transactions which, though certainly not fair in themselves are still not indictable."

In Reg. v. Woodman, 1879, 14 Cox C.C. 179, the prosecution advanced precisely the same argument that is urged here, contending that the defendant's intention was the existing fact about which the misrepresentation had been made. To this the court responded: "How can you define a man's mind? It is a mere promissory false pretence."

If we were to accept the government's position the way would be open for every victim of a bad bargain to resort to criminal proceedings to even the score with a judgment proof adversary. No doubt in the development of our criminal law the zeal with which the innocent are protected has provided a measure of shelter for the guilty. However, we do not think it wise to increase the possibility of conviction by broadening the accepted theory of the weight to be attached to the mental attitude of the accused.

In view of the foregoing we do not think it necessary to review the other points raised by appellant.

Reversed.

EDGERTON, Associate Justice (dissenting).

The court holds that "the great weight of authority * * * compels us". This is a new rule and an important one. I think it is erroneous.

Usually there are good reasons for a doctrine which is widely accepted, and uniformity itself has some value even in criminal law. Accordingly we should consider the weight of authority elsewhere for what it may be worth. But we should not determine our action by a count of foreign cases regardless of logic, consistency, and social need. "The social value of a rule has become a test of growing power and importance".[1] We should decide the question before us "in accordance with present-day standards of wisdom and justice rather than in accordance with some outworn and antiquated rule of the past"[2] which was never adopted here. To let judges who lived and

---

[1] Cardozo, The Nature of the Judicial Process, p. 73.
"Perhaps the most significant advance in the modern science of law is the change from the analytical to the functional attitude". Pound, Administrative Application of Legal Standards, Proceedings of American Bar Association, 1919, pp. 445, 449; quoted by Cardozo, op. cit.

[2] Funk v. United States, 290 U.S. 371, 382, 54 S.Ct. 212, 215, 78 L.Ed. 369, 93 A.L.R. 1136.

died in other times and places make our decisions would be to abdicate as judges and serve as tellers.

This court, like every other American court, overrules its own decisions when need arises.[3] Decisions of other courts are not more binding on us. Only last month we rejected a rule which was supported by the overwhelming weight of authority and adopted a contrary rule which we thought more logical and more useful.[4] As the New York Court of Appeals has said, "we may as well disregard the overwhelming weight of authority elsewhere and start with a rule of our own, consistent with practical experience".[5] This court's new rule against new rules appears to mean that this court must take no part in the development of the law.

Considered without regard to the foreign cases on which the court relies, the indictment is plainly valid. No doubt a promise is commonly an undertaking, but it is always an assertion of a present intention to perform. "I will" means among other things "I intend to". It is so understood and it is meant to be so understood. Intention is a fact and present intention is a present fact. A promise made without an intention to perform is therefore a false statement about a present fact. This factual and declarative aspect of a promise is not a new discovery. It has come to be widely recognized in civil actions for deceit.[6]

In criminal cases most courts and text writers have clung to an old illusion that the same words cannot embody both a promise and a statement of fact. But this tradition that in a criminal case "the statement of an intention is not a statement of an existing fact" has begun to break down.[7]

It is an obvious fiction. The meaning of words is the same whether their author is prosecuted civilly or criminally or not at all. The fiction that a promise made without intent to perform does not embody a misrepresentation conflicts with the facts, with the deceit cases, and with the interest of society in protecting itself against fraud. An Act of Congress makes it a crime in the District of Columbia to obtain money "by any false pretense, with intent to defraud".[8] Congress did not exempt, and the court should not exempt, a pretense conveyed by words which also convey a promise. As a matter of plain English there could be no clearer case of false and fraudulent pretense than a borrower's pretense that he intends to repay money which he actually does not intend to repay.

The old illusion that a promise states no facts is not the only source of the old tolerance of falsehoods regarding intention. That a fool and his money are soon parted was once accepted as a sort of natural law. In 1821 the fact that "common prudence and caution would have prevented any injury" seemed to an English court a good reason for refusing to penalize an injury which had been intentionally inflicted by a false promise. The fact that common agility in dodging an intentional blow would have prevented any injury would not have seemed a reason for refusing to penalize a battery. Fools were fair game though cripples were not. But in modern times, no one not talking law would be likely to deny that society should protect mental as well as physical helplessness against intentional injuries.

Though the court decides the case on the basis of authority, the opinion concludes with a defense of the prevailing rule. But

3 E. g., George's Radio, Inc., v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219; Ross v. Hartman, 78 U.S. App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370, certiorari denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080.

4 Kay v. Cain, —— U.S.App.D.C. ——, 154 F.2d 305.

5 Campbell v. New York Evening Post, 245 N.Y. 320, 328, 157 N.E. 153, 156, 52 A.L.R. 1432.

6 51 A.L.R. 46, 63; 68 A.L.R. 635, 637; 91 A.L.R. 1295, 1297; 125 A.L.R. 879, 881.

7 Commonwealth v. Morrison, 252 Mass. 116, 147 N.E. 588; Commonwealth v. McKnight, 289 Mass. 530, 195 N.E. 499, 506, petition for certiorari dismissed 296 U.S. 660, 56 S.Ct. 245, 80 L. Ed. 470; State v. McMahon, 49 R.I. 107, 140 A. 359; People v. Ames, Cal.App., 143 P.2d 92, 96; Smith v. Fontana, D.C. S.D.N.Y., 48 F.Supp. 55. Cf. State v. Bromley, 135 A. 813, 5 N.J.Misc. 195, affirmed 104 N.J.L. 186, 138 A. 923.

8 D.C.Code 1940, § 22—1301, 50 Stat. 628.

to justify this rule it would be necessary to show that false pretenses regarding intention are a harmless way of obtaining money, or else that intention cannot be proved in prosecutions for false pretenses as it is constantly proved in other criminal prosecutions and in civil actions for deceit.

Difficulties of proof are seldom greater in criminal cases than in civil, except that the prosecution must prove its case beyond a reasonable doubt. No peculiar difficulty of proof distinguishes this crime from others. Intentions of one sort or another must be proved in most criminal cases. They are usually proved by conduct. It is inherently no more difficult to prove an intent not to perform a promise than, for example, an intent to monopolize, to commit a felony, or to receive goods knowing them to be stolen. Appellant's conduct showed his intent. After getting $375 from a nurse by promising to buy liquor stamps and repay the money, he made the same promise a few days later and got $700 more. He said he needed the money to get the stamps. Yet he bought less than $40 worth of stamps, if any, during the next six weeks, and there is no evidence that he bought any stamps at any later time. Meanwhile he continued to borrow money from the woman. He made no repayments at any time. The jury might well conclude, as it did, that the difference between his promises and his performance was not accidental but was part of his original plan. The court does not suggest that the proof of his original intention was insufficient. If it were thought to be insufficient, the conviction should be reversed on that ground. The rule which the court adopts will make prosecutions impossible even when admissions or other evidence make guilt obvious.

No peculiar danger to innocent men distinguishes this crime from others. No honest borrower who fails to repay a loan, or changes his mind about the use which he intended to make of the money, is likely to be charged with obtaining it by false pretenses. Prosecutions are not undertaken without evidence and convictions do not withstand attack unless they are supported by sufficient evidence. The danger of a counter suit for malicious prosecution is always present to discourage unfounded charges. The court's picture of a flood of indictments against honest business men is unconvincing. No such flood has been observed in the few jurisdictions which have adopted the modern rule. It is true that innocent men are sometimes accused of crime. Innocent men have been convicted of murder.[9] As long as rape is a crime, intercourse which is actually voluntary or even entirely imaginary will sometimes be charged and even punished as rape. Since it is impossible to prevent occasional miscarriage of justice, every criminal statute jeopardizes innocent people in some degree. The court suggests that the law should not jeopardize legitimate business. But this is the unavoidable price of public protection against illegitimate business. If the suggestion is sound the anti-trust law, the pure food law, the child labor law, the law against receiving stolen goods, and many others should be repealed, for malicious and damaging charges and erroneous convictions are possible under all of them. If the suggestion is sound the entire law of false pretenses and not merely a part of it should be repealed, for legal machinery is fallible with respect to the making, the falsity, and the maker's knowledge of the falsity, of representations of every kind.

There is, as the court says, a vast difference between criminal penalties and civil redress. It is the more unfortunate to hold, as the court does, that a common sort of fraud is not a crime. Since civil redress is not punitive but compensatory, the decision means that the law of the District of Columbia offers no deterrent to this sort of fraud. If a swindler has property which can be taken in execution on a civil judgment, he may not always win by practicing this fraud. But he cannot lose. If he perseveres he will win in the long run, for he will not always be sued to judgment. And one who has no property on which execution can be levied is bound to win as often as he can find a victim.

---

[9] Edwin M. Borchard studies a number of instances in his book, Convicting the Innocent.