STATE OF CONNECTICUT *v.* WALTER S. SEMRAU

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 17-1643

Argued November 4—decided December 5, 1963

*Francis S. Kane,* of Southington, special public defender, for the appellant (defendant).

*Robert P. Sneideman,* prosecuting attorney, for the appellee (state).

JACOBS, J. The defendant was charged, in an information in two counts, with the crime of obtaining money by false pretenses in violation of § 53-360

of the General Statutes. As to the first count, the court directed the jury to return a verdict of not guilty; as to the second count, the defendant has appealed from a judgment based on a verdict of guilty, his sole assignment of error being the court's denial of the motion to set aside the verdict on the ground that it was not supported by the evidence.

"Two considerations must be kept before the court before we can set aside a verdict. Great weight must be given to the ruling of the trial court, and all reasonable presumptions resolved in its support. . . . It must be remembered that the trial judge 'was acting in the exercise of a legal discretion, and his action is not to be disturbed by us unless it appears that the discretion was abused.' . . . 'The question never is whether this court, upon the evidence in a cause, would come to the conclusion reached by the jury, but it is rather whether that conclusion is manifestly an unreasonable one under all the circumstances; such an one as no jury, acting fairly and reasonably, would be likely to reach on the evidence.' . . . Our rule means this— 'the verdict will not be disturbed if there is any reasonable ground appearing in the evidence on which the jury might have acted.'" *State* v. *Chin Lung,* 106 Conn. 701, 704; *State* v. *Hayes,* 127 Conn. 543, 553; *State* v. *Bradley,* 134 Conn. 102, 108; Maltbie, Conn. App. Proc. § 190. In the case before us, "[w]e are hampered in our review of . . . [the ruling on the motion to set aside the verdict] by the court's failure to file any memorandum accompanying and explaining its denial of the motion." *Lancaster* v. *Bank of New York,* 147 Conn. 566, 573. "Even without such a memorandum, however, the court's denial of the motion is entitled to considerable weight. Although we have not the reassurance which a carefully prepared memorandum would have furnished, we should assume that the court

properly performed its function in passing upon the motion." *Lupak* v. *Karalekas,* 147 Conn. 432, 433.

The denial of the motion to set aside the verdict is to be tested by the appellate court by determining whether the jury might reasonably have found that the evidence established beyond a reasonable doubt the guilt of the accused of the crime charged. *State* v. *Chapman,* 103 Conn. 453, 457. For the proper application of this rule, we are required to make a careful study of the entire evidence as certified to us. The jury could have reasonably found from the evidence the following facts: The defendant was the sole owner of, and was engaged in, the business of selling freezer-food plans direct to consumers under the name of Universal Distributing Company. Sometime prior to February 17, 1962, the defendant, pursuant to an appointment made by telephone, called at the home of Richard Ireland and Dolores Ireland, husband and wife, who, with their children, lived at 155 Wonx Spring Road in Plantsville, in order to interest them in the purchase of a freezer. The defendant displayed advertising material of freezers of various colors and types. The Irelands were reluctant to enter into a transaction of this kind at this particular time. They wanted time to give the matter further consideration. The defendant was annoyed at the delay but left. On a subsequent visit, which took place on February 17, 1962, the Irelands were ready to make the purchase; and, on that date, Richard Ireland signed a "Purchase Agreement" by the terms of which he agreed to purchase a sixteen-cubic-foot Zenith combination refrigerator-freezer at a total cash price of $613.76, less a down payment of $13.76, leaving a balance of $600, which was to be financed through a bank over a period of twenty-four months. The "first payment due the

financial institution" was $14.82, and each of the remaining twenty-three payments was to be $29.00. As part of the transaction, the purchaser was also to receive a three months' food supply. The purchase agreement also specified "normal delivery time Freezer & Food: 10–12 days." Financing was arranged through the Connecticut Bank and Trust Company. On the following Monday, February 19, 1962, the defendant had obtained a check for $600 from the bank, made payable to "Richard or Dolores Ireland and Universal Dist. Co." Dolores Ireland, with the knowledge and consent of her husband, endorsed the check and turned it over to the defendant. By postcard, postmarked March 1, 1962, and addressed to Richard Ireland, the defendant wrote: "There will be a slight delay in your Plan delivery. Your model combination hasn't come up from our New York Warehouse as of February 27th—Hope to complete delivery in next few days." A second postcard, postmarked March 15, 1962, also addressed to Richard Ireland, read: "Your Zenith combination has not arrived in our warehouse yet. . . . If it is not delivered within next few days, we will set up your first payment to fall on a later date." A final postcard, postmarked March 22, 1962, advised Ireland that "because of the unavoidable delay on delivery of your Zenith and Food, this company will make your first payment of $14.82 due Apr. 3 to the Bank. The minute the Zenith comes in, we'll deliver . . . expecting in very shortly." Delivery was never made. Subsequent events disclosed that the defendant was hopelessly in debt. He conceded that "my situation is so negative that I am continually involved in obtaining money just to put food on the table."

The crime of obtaining property by false pretenses is of statutory origin; it did not exist at common law. *United States* v. *Watkins*, 28 Fed.

Cas. 419, 439 (No. 16,649); *McKenzie* v. *State,* 11 Ark. 594; 35 C.J.S. 802, False Pretenses, § 2. "Until 1757 the obtaining of property by false pretences was not generally a crime." 11 Holdsworth, History of English Law, p. 532 (1938). The early common law, influenced by the dogma of caveat emptor, declined to treat, as criminal, cases where a person acquired another's property through simple deception. The classic justification was given by *Holt, C. J.,* in 1703: "Shall we indict one man for making a fool of another?" *Regina* v. *Jones,* 2 Raym. Ld. 1013, 91 Eng. Rep. 330. It was made a crime in England in 1757 by a statute (30 Geo. II, c. 24, § 1) which is the prototype of false pretenses statutes in almost all American jurisdictions. See Pearce, "Theft by False Promises," 101 U. Pa. L. Rev. 967, 968, n.6; note, 3 Colum. L. Rev. 204. "It appears to have been settled, soon after the statute was passed, that the pretence must relate, not to a future, but to a past or a present, fact. The reason given was that if the representation was as to a past or present fact it was impossible to verify its truth, but if it was a representation as to some future transaction, enquiries could be made, so that, if the party was deceived, it was through his own negligence." Holdsworth, op. cit., citing *Young* v. *Rex,* 3 T.R. 98, 100, 100 Eng. Rep. 475. "The rule is well established in most jurisdictions that the criminal offense of obtaining money or other valuable thing by false pretense is not predicable upon the present intention of the defendant not to comply with his promises or statements as to his future acts." Note, 168 A.L.R. 833, 835.

Connecticut has recognized and adopted the traditional and historical limitation on the application of the statute in that the pretense or representation must be one relating to an existing or past fact and not to some future transaction. *State*

v. *Robington,* 137 Conn. 140, 142 (citing, among other cases, *Chaplin* v. *United States,* 157 F.2d 697 [D.C. Cir.]).[1] In the *Chaplin* case, the appellant was convicted of obtaining money by false pretenses under an indictment which charged him with obtaining money from the victim by means of a representation that he would use it to do two things: (1) buy stamps; (2) repay the money. He never intended to do either. The court was confronted with the question whether the defendant's present intention at the time he received the money not to do the two things he promised for future action would support a conviction of obtaining money by false pretenses. The Court of Appeals for the District of Columbia, in reversing the conviction (Edgerton, J., dissenting), found (p. 698) that a majority of the courts "have not subscribed to the theory that 'intention,' as manifest by false and misleading promises, standing alone, is a *fact* in the sense required for a conviction on the charge of false pretenses." The rationale of the majority opinion is: "It is of course true that . . . the intention to commit certain crimes . . . [is] ascertained by looking backward from the act and finding that the accused intended to do what he did do. However, where, as here, the act complained of— namely, failure to repay money or use it as specified at the time of borrowing—is as consonant with ordinary commercial default as with criminal conduct, the danger of applying this technique to prove the crime is quite apparent. Business affairs would be materially encumbered by the ever present threat that a debtor might be subjected to criminal penal-

---

[1] California has rejected the doctrine in *Chaplin* v. *United States,* supra. See *People* v. *Ashley,* 42 Cal. 2d 246, 263 ("We do not find . . . [its] reasoning persuasive"). For a criticism of the *Chaplin* rationale, see Pearce, "Theft by False Pretenses," 101 U. Pa. L. Rev. 967, 1003; *United States* v. *Rubinstein,* 166 F.2d 249 (2d Cir.); *United States* v. *Grayson,* 166 F.2d 863 (2d Cir.).

ties if the prosecutor and jury were of the view that at the time of borrowing he was mentally a cheat." The essence of the majority opinion in the *Chaplin* case is that "promissory fraud is indistinguishable from innocent breach of contract except in the mental element. The mental element is generally determined by reasoning backward from the act, *i.e.,* in this instance from non-performance. A rule which makes promissory fraud criminal would therefore permit juries to punish innocent breaches of contract, would encourage disgruntled creditors to persecute judgment-proof debtors, and would materially encumber business affairs." Pearce, op. cit., 1003.

The question, then, for our decision comes down to whether the present intention of the defendant not to deliver the Freezer-Food Plan at some future time, as he had agreed to do, relates to a "present or past existing fact" such as will support a conviction of the crime of obtaining money by false pretenses. "A false pretense is 'a representation of some fact or circumstance calculated to mislead, which is not true.' *State* v. *Penley,* 27 Conn. 587, 591. A mere promise to do an act, even though the promisor has, at the time, no intention of keeping it, is not such a pretense or device as to come within the Statute against False Pretenses." *State* v. *Robington,* supra, 142; see *State* v. *Austin,* 159 Me. 71; *People* v. *Karp,* 298 N.Y. 213, 216; *Helsey* v. *State,* 18 Okla. Crim. 98. The criminal courts have hesitated to hold that a promise not intended to be kept is a misrepresentation of fact. *Commonwealth* v. *Althause,* 207 Mass. 32.

The most that can be said of the evidence is that it established that Ireland parted with his money as a result of false promises made by the defendant as to his future conduct. The evidence suggests

that the pretense here was nothing more than a promise to fulfil a contract.[2] We conclude that there was no evidence on which the jury could reasonably have found beyond a reasonable doubt that the defendant was guilty of the crime charged; hence, the court committed reversible error in denying the defendant's motion to set aside the verdict.

There is error, the judgment is set aside and the case is remanded with direction to grant the motion to set the verdict aside.

In this opinion DEARINGTON and KINMONTH, Js., concurred.

---

[2] Dolores Ireland, whose testimony corresponded closely to that of her husband, testified on direct examination as follows: "Q.—When did he promise to deliver when you signed this purchase agreement? When was he going to deliver the freezer? A.—I don't remember the date. Q.—Was it supposed to be within a matter of a day or two? A.—Yes, sir. He said it wouldn't be long before we got it. Q.—Do you know whether or not Mr. Semrau has a place of business or a warehouse of his own? A.—I don't know. I don't know. Q.—Do you know anything of this man? A.—We knew nothing about him. Q.—You knew nothing about him at the time? A.—No."