[Crim. No. 630. Third Appellate District.—August 5, 1922.]

# THE PEOPLE, Respondent, v. CHARLES HAHN, Appellant.

[1] CRIMINAL LAW — ROBBERY — IDENTIFICATION OF DEFENDANT — EVIDENCE—VERDICT.—In this prosecution for robbery the evidence as to the identification of the defendant by the prosecuting witness was sufficient to support the verdict.

[2] ID.—FALSE TESTIMONY—INSTRUCTIONS.—The trial court, having instructed the jury that a witness "willfully false in one part of his or her testimony is to be distrusted in others; that is to say, if you find that a witness has deliberately and willfully testified falsely as to any material matter, and the jury are convinced that such witness has stated what was untrue not as the result of mistake or inadvertence, but willfully and with design to deceive, you may treat all of his or her testimony with distrust," did not commit error in refusing defendant's requested instruction as to the discredit of a witness who has testified falsely in a material part of his testimony.

[3] ID. — WEIGHT OF EVIDENCE — INSTRUCTIONS.— In a prosecution for robbery, it is proper to instruct the jury, as prescribed by section 2061 of the Code of Civil Procedure, that "Your power of judging of the effect of evidence is not arbitrary but is to be exercised with legal discretion and in subordination to the rules of evidence. You are not bound to decide in conformity with declarations of any number of witnesses, which do not produce conviction in your minds, against a less number or against a presumption or other evidence satisfying your minds."

2. Necessity of qualifying by conscious falsity an instruction under a statute enacting the maxim, *falsus in uno, falsus in omnibus*, without that qualification, notes, 8 Ann. Cas. 450; Ann. Cas. 1912D, 1351; 29 L. R. A. (N. S.) 680.

[4] ID.—ESSENTIALS OF CRIME—ACT AND INTENT—INSTRUCTIONS.—In a prosecution for robbery an instruction that in "every crime or public offense there must exist a union or joint operation of act and intent or criminal negligence. The intent or intention with which an act is committed is manifested by the circumstances connected with the offense, and the sound mind and discretion of the person accused. All persons are of sound mind who are neither idiots, lunatics nor affected with insanity," embodies a correct legal principle, and if there is no claim or evidence to the contrary, the instruction can result in no prejudice.

[5] ID.—CONSIDERATION OF ENTIRE EVIDENCE—INSTRUCTIONS.—The court having instructed the jury that "in arriving at your verdict, it is your duty to carefully and candidly consider the entire evidence in the case," and "it is the duty of the jury to consider the evidence in the light most favorable to the defendant if it is reasonable and probable, and if the jury after considering all the evidence have a reasonable doubt as to whether the defendant committed the offense charged in the information it is their duty to acquit," it did not commit error in refusing defendant's proposed instruction in reference to his conduct in making no effort to flee after the offense was committed.

[6] ID.—MISCONDUCT OF DISTRICT ATTORNEY — INNUENDO — WAIVER.— Misconduct of the district attorney in making a certain innuendo with reference to the reputation of the defendant in his closing argument to the jury is waived where the court is not requested to disregard the remarks.

APPEAL from a judgment of the Superior Court of Sacramento County. Malcolm C. Glenn, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. S. Daly for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was convicted of robbery and he appeals from the judgment and order denying his motion for a new trial.

[1] One point is that the evidence was insufficient, particularly as to the identification of the defendant by the prosecuting witness, to support the verdict. How utterly insubstantial is this claim may be seen from the following testimony. John Gibson, the prosecuting witness, testified:

"I was going home; I was going up Fourth Street to go to bed, and I met that big fellow there, and two young fellows, and that fellow. Q. When you say that big fellow, you are referring to the defendant Scheckmaster? A. Scheckmaster, yes; and I saw all three of them standing near the corner, and I passed by, and as soon as I passed their corner, two of them jumped in front of me, and this big fellow threw his arm around me. Q. Where did he put his arm around you? A. Like this [indicating] ; and these other fellows went through my pockets. Q. What, if anything, did they take off of you at that time? A. Fifty dollars and a half. . . . Q. Now, Mr. Gibson, are you sure that the defendant Scheckmaster was the man that held you at the time and in the manner you have described? A. Yes, sir."

He further testified that he saw the defendant and one Hilger, who had been convicted of the same charge by a jury, together that afternoon.

Police Officer J. F. Pierini testified that he was on the scene shortly after the hold up, that "I saw two fellows running toward Fourth Street, and this fellow Hilger ran toward me. Q. How far away from you were they at that time? A. Well, I couldn't observe the distance, because they were running. I had hold of Hilger taking him over to Jack Gibson, who was sitting in the doorway. . . . There was one big man and the others were not very big, about the size of Hilger. Q. But one of them was a large fellow? A. Yes, sir. Q. And in reference to this defendant, comparatively was he about the same build? A. About the same. Q. Of course, as I understand you, you did not see his face, and you do not attempt to say that he is actually the defendant? A. No, I arrested the defendant on Jack Gibson's description. . . . I searched Hilger, and took Gibson up and asked him who the fellows were, and he gave me a description of the man that strong-armed him; gave me the description of a man wearing corduroy pants, a blue shirt and a sweater underneath, and having a dark coat, slouch hat, and a Jewish-looking fellow, Roman nose, wearing glasses." It is indeed rather remarkable that such detailed description of the defendant could be given by the victim, but it would have been even more remarkable if,

in view of the foregoing testimony, the jury had failed to
convict the defendant.

The other objections relate principally to the action of
the court in the matter of instructions and we find therein
no substantial merit.

[2]   The requested instruction as to the discredit of a
witness who has testified falsely in a material part of his
testimony was covered as follows: "A witness willfully false
in one part of his or her testimony is to be distrusted in
others; that is to say, if you find that a witness has de-
liberately and willfully testified falsely as to any material
matter, and the jury are convinced that such witness has
stated what was untrue not as the result of mistake or
inadvertence, but willfully and with design to deceive, you
may treat all of his or her testimony with distrust."

Of course, it is entirely useless to give such instruction
as the average man does not need to be told that he should
distrust a deliberate liar, but, at any rate, appellant has
no cause for complaint in that respect.

[3]   Appellant thinks the court committed error in giv-
ing this instruction: "Your power of judging of the effect
of evidence is not arbitrary but is to be exercised with legal
discretion and in subordination to the rules of evidence.
You are not bound to decide in conformity with declara-
tions of any number of witnesses, which do not produce con-
viction in your minds, against a less number or against a
presumption or other evidence satisfying your minds."

The legislature has prescribed that this instruction shall
be given (sec. 2061, Code Civ. Proc.), and while it may be
of no assistance to the jury, involving as it does a mere
legal platitude, it assuredly can do no harm.   It is given
in nearly every case and this is the first time that we have
known such action to be criticised.

[4]   It may be that there was no necessity for giving this
instruction: "In every crime or public offense there must
exist a union or joint operation of act and intent or crimi-
nal negligence.   The intent or intention with which an act
is committed is manifested by the circumstances connected
with the offense, and the sound mind and discretion of the
person accused.   All persons are of sound mind who are
neither idiots, lunatics nor affected with insanity."

It embodies, at any rate, a correct legal principle, and if, as argued by appellant, there was no claim or evidence to the contrary, it is manifest that the instruction could have resulted in no prejudice.

The instructions as to the burden of proof and of reasonable doubt, proposed by defendant, were amply and clearly covered by the charge of the court.

[5] There was no error in the refusal of the proposed instruction in reference to the conduct of the defendant in making no effort to flee after the offense was committed. It was a subject for legitimate argument by counsel before the jury, but the court was not called upon to single out a particular circumstance in evidence, but pursued the proper course in directing the jury that "in arriving at your verdict, it is your duty to carefully and candidly consider the *entire* evidence in the case," and "it is the duty of the jury to consider the evidence in the light most favorable to the defendant if it is reasonable and probable, and if the jury after considering *all* the evidence have a reasonable doubt as to whether the defendant committed the offense charged in the information it is their duty to acquit."

The instruction proposed by defendant, beginning "The defendant in this case is entitled to the independent judgment of every juror who has been selected to try him" was given on request of the people and, manifestly, the court could not be expected to repeat it.

Appellant has no ground for complaint because his proposed instruction as to the testimony of the defendant was refused since it was covered by this direction: "The jury has no right to disregard the testimony of the defendant on the ground that he is the defendant and stands charged with the commission of a crime. The law presumes the defendant to be innocent until he has been proven guilty; the jury should fairly and impartially consider his testimony together with all the other evidence in the case."

The refusal to give this proposed instruction, "You are instructed that one of the material facts in this case is the identification of the defendant in the robbery by the complaining witness, John Gibson, and you are further instructed that in determining the testimony upon that fact, you must construe it in the most favorable light toward the defendant and unless you are satisfied to a moral cer-

tainty and beyond all reasonable doubt that the defendant has been fully identified by the complaining witness, John Gibson, then it is your duty to find the defendant not guilty,'' was entirely justified for the reasons stated by the trial judge, as follows: ''1st. There is a general instruction given to consider testimony most favorably to defendant. 2d. The jury are instructed elsewhere that before defendant can be convicted it must be shown that he committed the crime. 3d. The term 'fully identified' as used is uncertain and meaningless. 4th. The general instructions amply cover the ground. 5th. The proper instruction would be that if *from the whole case* rather than from the testimony of one witness the identity has not been established.''

Appellant's complaint of the refusal to give the proper instruction as to evidence of good character is completely answered by quoting the following, which was given: ''The defendant has given proof of his previous good character for honesty and integrity. The good character of the defendant, when proven, is itself a fact in the case. It is a circumstance *tending* in a greater or less degree, to establish his innocence, and it is not to be put aside by the jury, in order to ascertain if the other facts and circumstances, considered by themselves, do not establish his guilt beyond a reasonable doubt. If the defendant be proved of good character for honesty and integrity such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed but for such good character.''

[6] In this connection appellant justly criticises the assistant district attorney in stating to the jury in his closing argument: ''Now, the reputation of a man, I submit to you, as to honesty and integrity, that is established by the habitués of the Mecca, is one which I am sure would not appeal to this jury, or any twelve respectable people in Sacramento.'' There was no evidence offered as to the present character of this resort, which it seems, was formerly the ''Casino'' of rather unsavory reputation and the prosecutor should have omitted the innuendo. However, the court was not requested to instruct the jury to disregard it, and thus appellant waived his objection to it. In fact, in view of the strong and convincing evidence of the

guilt of the defendant, an error of such trivial importance should not be treated seriously.

The judgment and order are affirmed.

Finch, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 5, 1922.