[Crim. No. 621. Fourth Dist. Nov. 30, 1943.]

THE PEOPLE, Respondent, v. PEARL AMES, Appellant.

Blodget & Tobias for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

MARKS, J.—This is an appeal from an order denying a motion for new trial, made after defendant had been granted probation, following her conviction of perjury and grand theft.

Defendant was a resident of the city of Huntington Beach. In April, 1941, she became acquainted with W. M. Turk, an aged resident of the same city. He was then about 86 years old. He went to live at defendant's house and paid her $30 a month for board and lodging. He, defendant, and a third party named Anthony F. Roth, discussed the purchase of a used automobile. Turk drew $800 in currency from his bank account by check dated June 2, 1941. He testified he gave defendant the $800 sometime in June, 1941. She purchased a car on June 6, 1941, trading in an old car and paying the balance of the purchase price in cash, taking title in her own name.

In December, 1941, she and Turk had a disagreement and he left her house. On September 4, 1942, Turk filed suit against her which came on for trial in the Superior Court of Orange County in November, 1942. It involved the ownership of the car. Defendant testified in her own behalf and her evidence given there furnished the basis of a charge of perjury which was subsequently filed against her. She was also accused of grand theft of the $800 Turk had given her. She was convicted on both counts, was granted probation,

and has appealed from the order denying her motion for new trial.

The specific perjury charged against her is thus set forth in the information:

"That the said Pearl Ames . . . took the witness stand and gave in evidence, among other things, in substance as follows:

"That she had borrowed a substantial sum of money from the Santa Ana Building and Loan Association to apply on the purchase price of an automobile, whereas, in truth and in fact, said statement was false and she, the said Pearl Ames, knew that said statement was false. That said false statement was material to the issue of the cause then and there on trial in the aforesaid Superior Court."

The evidence discloses that several years prior to the transactions here involved, defendant had borrowed $750 from the Santa Ana Building and Loan Association; that after certain bills were paid there remained $159.45 which the association paid to defendant in December, 1935. She testified that she kept this money intact and applied it on the purchase price of the automobile which she bought in June, 1941. This evidence stands undisputed in the record except insofar as it is contradicted by circumstantial evidence.

The car she purchased, including the sales tax and license transfer fee, cost $819.55. She received a credit of $85 for the old car and paid the balance of $734.55 in cash, mostly in currency.

Mr. Turk testified that he gave defendant eight one hundred dollar bills. The agent making the sale testified that the money paid him was not in one hundred dollar bills though there might have been two or three in the "roll of money she handed me." This evidence is not contradicted except by the evidence of defendant who testified there were no one hundred dollar bills in the money she paid for the car.

It is therefore established in this case that the Santa Ana Building and Loan Association, in December, 1935, paid defendant $159.45.

If the allegation in the information to the effect that defendant falsely testified that she borrowed money from the Santa Ana Building and Loan Association *to apply* on the purchase price of the automobile, was intended to allege that she testified the loan was made at about the time of the purchase of the car for the purpose of getting money with

which to make the purchase, it is not supported by the evidence. While no reporter's transcript of the evidence given in the civil action was introduced in evidence, (we are informed there was no reporter at the trial) the trial judge and the attorney for plaintiff in the civil action both gave a summary of defendant's evidence in that case. The attorney summarized the testimony of defendant on this question as follows:

"Q. Then when you asked her whether or not any of the money came from any other place did she say that some of it may have come from the Santa Ana Building and Loan Association? A. She said some of it did come. . . . Q. And did she say she couldn't recall when it was that she borrowed the money? A. Yes. Q. And she said she couldn't recall exactly how much she had borrowed at the time? A. She said she couldn't recall how much it was. . . . Q. Did she tell you she couldn't remember how much cash she got out of the Building and Loan? A. She said she couldn't remember how much she had borrowed. Q. And did she tell you it had been some time since that had occurred? A. She told me she couldn't remember. She said she didn't remember how long it had been." The testimony of the trial judge is to the same general effect.

Thus it appears that Mrs. Ames did not testify in the civil action that the loan was made to apply on the purchase price of the car.

As the information alleges the falsity of the testimony that defendant had borrowed a *substantial* sum from the Building and Loan Association *to apply* on the purchase price of the car, assuming she so testified, we must first consider whether or not $159.45 constituted such a *substantial* sum when and if used as a part of the purchase price.

In the case of *Tax Commission of Ohio* v. *American Humane Education Society,* 42 OhioApp. 4 [181 N.E. 557], the court construed a statute under which a public charity was exempted from paying an inheritance tax if it carried on a "substantial part" of its activities within the state. The court said:

"Counsel for plaintiff in error adopt the definition of 'substantial' as found in Funk & Wagnalls Standard Dictionary as follows: 'Of real worth and importance; of considerable value; valuable.'

"We are disposed to accept this as a correct definition of

what constitutes a substantial part of the society's expenditures.

"Bouvier defines 'substantial damages' as 'Damages assessed by the verdict of a jury, which are worth having as opposed to nominal damages.'"

The evidence disclosed that one forty-eighth of the activities of the society were conducted in Ohio. It was held that this was a substantial part of its activities so that a bequest to it in Ohio was not subject to inheritance tax.

In determining what may be classed as a substantial sum of money, which was a part of a sum paid, the size of the transaction should be one important element. In this case the transaction was small. $159.45 was a little less than 20 per cent of the total amount involved, and a little more than 20 per cent of the cash paid. Under the circumstances here we cannot say that $159.45 was not a substantial part of the amount paid for the automobile. (*Thomas Haverty Co. v. Jones,* 185 Cal. 285 [197 P. 105].)

Thus, if the testimony of defendant be believed, she did apply on the purchase price of the car a substantial part of its purchase price which she had borrowed from the Santa Ana Building and Loan Association more than six years before. There is much circumstantial evidence in the record casting serious doubt on the truth of her evidence to the effect that she had kept the $159.45 and had applied it on the purchase price of the car. She was thoroughly impeached in other respects. The jury, being the judge of the credibility of the witnesses and the weight to be given their evidence, was justified in disbelieving her evidence to the effect that she had kept the money intact over that long period of time and had used it in the purchase of the car.

There is a further question which we must consider. It is alleged in the information that she falsely testified in the civil action that she borrowed money from the Santa Ana Building and Loan Association *to apply* on the purchase price of the car. We have searched the record and can find no evidence supporting this allegation and counsel has directed our attention to none. She merely testified that some of the money used for the purchase of the car came from the Santa Ana Building and Loan Association which is a material variance from the allegation that she borrowed the money *to apply* on the purchase price of the car and does not support the allegation.

In *People* v. *Mizer,* 37 Cal.App.2d 148 [99 P.2d 333], it was said:

"To invalidate a verdict on account of variance between the allegations of the information and evidence of the crime, it must appear that some *necessary and material* element of the charge lacks proof. The absence of evidence on an immaterial portion of a recitation of facts will not vitiate the verdict. In 31 Corpus Juris, page 840, section 451, it is said in that regard:

" 'Variance is defined to be a disagreement between the averments of the indictment and the proof in some matter *which is legally essential to the charge. . . .* A variance as to a matter which is not material is not fatal.'

"With respect to the crime of perjury it is likewise said in 48 Corpus Juris, page 886, section 138:

" 'Strictness of proof is required in all matters which constitute the essence of the crime, and a substantial variance in this regard is fatal; but strict proof is not required as to immaterial averments, or it has been stated, as to those which are not descriptive of the offense, and a variance in respect of such matters is not fatal.' "

We regard the allegation that defendant testified in the civil action that she borrowed the money *to apply* on the purchase price of the car as a material part of the charge against her as it was descriptive of the perjury which she was alleged to have committed. As the evidence fails to support that portion of the allegation the motion for new trial should have been granted as to count one of the information. This makes it unnecessary for us to consider the many purported errors urged by defendant in connection with that charge.

In count two of the information defendant was accused of the crime of grand theft alleged to have been committed as follows:

"That the said PEARL AMES, on or about the 2nd day of June, 1941, at and in the County of Orange, State of California, and before the filing of this information, did wilfully, unlawfully and feloniously, by false and fraudulent representations and pretenses, obtain and defraud W. M. Turk of the sum of $800.00, lawful money of the United States."

It is now urged that the evidence is insufficient to support her conviction under this count. We may briefly sum-

marize the evidence tending to support the verdict, disregarding conflicts.

Turk and defendant became acquainted in April, 1941. He desired to secure an old age pension. Probably in May, defendant discovered that Turk had $1,000 on deposit in his bank account. She told him he could not get the pension while he had that amount of money to his credit in the bank. She took him for several rides in an automobile owned by herself and Anthony F. Roth who was boarding and lodging at her house. Roth accompanied them on some of these rides. The purchase of an automobile to replace the one in which they were riding, which was old, was discussed and defendant told Turk that she could take him riding frequently if she had a better car. Turk wanted to board and lodge at defendant's house and she agreed to take him for $30 per month. On June 2, 1941, Roth, at Turk's request, (he could neither read nor write), and in the presence of defendant, wrote a check for $800 which Turk signed with his mark. Turk cashed this check and hid the money in his home. Defendant learned of this and told him that this was too much money to keep in such a place and advised him to give it to her for safe keeping which he did. The date he gave her the money is not made clear though a study of his testimony leaves the impression that it was before she purchased the car on June 6, 1941. The discussion about the purchase of the car was continued by the three persons after it was started in May and Turk finally said he was willing to contribute five or six hundred dollars to that fund but did not want to furnish more. He moved into defendant's house about June 15, 1941, and continued to live there until some time in December, 1941, for which he paid defendant the agreed price.

Turk's testimony concerning the occasion of his leaving defendant's home is to the following effect: That after an absence from home of about two days, defendant returned, and without cause picked a quarrel with him; that she cursed him and ordered him to leave; that she armed herself with a butcher knife and threatened his life; that he left in about two days; that he had not ridden in the automobile since that time. He testified that he had asked defendant for some writing showing his interest in the car but that she told him it was not necessary.

Turk described the agreement under which he made his contribution to the purchase price of the car as follows:

"Q. Just tell the jury what that conversation was. A. The car was put in her name and I was supposed to have a home there by lifetime, and I was to have the car to go back and forth in. The car was to be hers and I was to go and she was to take me any place I wanted to go. Q. You say 'supposed to.' Is that what she told you? A. Yes, she told me time and again she would take me."

Title to the automobile stood in the name of defendant and she took Turk for rides in it until he left her house in December. It is argued that she faithfully performed the terms of the contract as detailed by Turk until he left her home; that the only representations made by her as to present or past facts were carried out by her so there was no fraud or misrepresentation on her part when she obtained the money from Turk; that the only representations he claimed were not carried out pertained to events to occur in the future, amounting to predictions; that such expressions or predictions as to future events cannot support a conviction of grand theft committed by means of false and fraudulent representations and pretenses. (*People* v. *White,* 85 Cal.App. 241 [259 P. 76]; *People* v. *Jackson,* 24 Cal.App.2d 182 [74 P.2d 1085].)

It is the settled law that the false representations made by a defendant must relate to a present or past fact. (*People* v. *Wasservogle,* 77 Cal. 173 [19 P. 270]; *People* v. *Walker,* 76 Cal.App. 192 [244 P. 94]; *People* v. *Moore,* 82 Cal.App. 739 [256 P. 266]; *People* v. *Robinson,* 107 Cal.App. 211 [290 P. 470]; *People* v. *Reese,* 136 Cal.App. 657 [29 P.2d 450].)

The representations made by defendant, as described by Turk, covered other matters than the purchase of the car and placing the title to it in the name of defendant. According to his testimony she agreed to give him a home for life as part of the consideration for the delivery to her of the $800 and of $30 per month besides taking him places he wanted to go.

That two people can make a valid present contract for future care and support for life of one of them is too well settled to need citation of authorities. If one of the parties entertains a present intention of not performing her part of such a contract when it is made, and falsely represents to the

other that she will give him a home and care for life and has no present intention of performing, and obtains money or property from the other while he relies on the truth of such false representations, then they relate to a present fact and are not merely predictions of the occurrence of future events or the expressions of an opinion concerning them.

The present intent not to perform the obligations of a contract under which money or property is obtained from another can rarely be shown by direct evidence. Generally it is necessary to resort to circumstantial evidence to prove such an intent not to perform.

Because a false statement of a present fact is coupled with a false promise of a future act, it does not overcome the effect of the false pretense concerning the present fact. (*People* v. *Bowman,* 24 Cal.App. 781 [142 P. 495].)

Section 21 of the Penal Code provides: ''The intent or intention is manifested by the circumstances connected with the offense. . . .'' In *People* v. *Alba,* 46 Cal.App.2d 859 [117 P.2d 63], it was said:

''Grand theft is accomplished by fraudulently procuring a sum of money in excess of two hundred dollars from the owner by means of artifice, trickery or misrepresentations even though it is obtained as a pretended loan if it appears to be the intention of the accused person at the time of the transaction not to repay the money. (*People* v. *Weibert,* 18 Cal. App.2d 457, 464 [64 P.2d 169]; *In re Clark,* 34 Cal.App. 440 [167 P. 1143]; 15 Cal.Jur. 905, secs. 11 and 12; 32 Am.Jur. 922, sec. 32.) The question of the intent with which money is procured is a matter for the determination of the jury.''

Defendant's attention to Turk and her solicitation for his welfare after she first met him, her approach which resulted in obtaining possession of his $800, her unauthorized use in the purchase of the automobile of more than the sum Turk had authorized and her appropriation of the balance were all matters for consideration by the jury on the question of present intent to defraud. This and other evidence of her conduct, when coupled with that showing the violent, unprovoked and unjustifiable assault on Turk when she drove him from her home, seems to be sufficient to support the inference of the jury that her promises and representations were false and fraudulent and were made with a present intention to defraud. That Turk believed her and parted with his money in reliance upon her good faith and the truth of

her promises seems evident. Under the decisions already cited this furnished sufficient evidence of a present intention to defraud, when such inference is drawn by the jury, to support its verdict of guilty of grand theft.

 Defendant argues that it was prejudicial error to deny her motion to have the two counts of the information tried separately. She argues that the grand theft was alleged to have been committed on June 2, 1941, and the perjury on November 12, 1942, with no sufficient connection between the offenses to justify their trial together.

Section 954 of the Penal Code permits two or more offenses connected together in their commission to be charged in separate counts of an information and to be tried together. Here the two offenses, while separate crimes, alleged to have been committed at different times, grew out of the same transaction and much of the same evidence was necessary to establish her guilt or innocence under both counts. We can see no abuse of discretion in the denial of the motion to grant separate trials. (*People* v. *Feigelman,* 65 Cal.App. 319 [223 P. 579]; *People* v. *West,* 34 Cal.App.2d 55 [93 P.2d 153]; *People* v. *Duane,* 21 Cal.2d 71 [130 P.2d 123].)

Defendant relies on *People* v. *Frank,* 130 Cal.App. 212 [19 P.2d 850], where it was held error to try together charges against defendant of robbery, burglary and assault with a deadly weapon with intent to commit murder. The principal ground for reversal was that the three offenses charged did not belong to the same class.'' In stating one of the reasons for its conclusion, the court, quoting from *McElroy* v. *United States,* 164 U.S. 76 [17 S.Ct. 31, 41 L.Ed. 355], said: ''We do not think the statute authorizes the joinder of distinct felonies, not provable by the same evidence and in no sense resulting from the same series of acts.'' This declaration is sufficient to distinguish the instant case from the Frank case. Here both crimes grew out of the same transaction and evidence to prove the commission of one was necessarily admissible to prove the other.

 Defendant urges that the allegations of the second count of the information fails to state facts sufficient to constitute a public offense. Since the adoption of the simplified form of pleading in criminal cases (secs. 950, 951, 952, Penal Code) this argument lacks convincing force. It is sufficiently answered in the cases of *People* v. *Robinson,* 107 Cal.App. 211 [290 P. 470]; *People* v. *Tullos,* 57 Cal.App.2d 233 [134

P.2d 280]; *People* v. *Kirsch,* 204 Cal. 599 [269 P. 447], and *People* v. *Myers,* 206 Cal. 480 [275 P. 219].

Defendant complains of numerous instructions given by the trial judge. A majority of them relate to the charge of perjury. As we have already indicated our conclusion that the evidence is insufficient to sustain the verdict of guilty of perjury we need give no further attention to those instructions.

Defendant complains of portions of People's instruction Number Two, from which we quote the following:

"You are not bound to decide in conformity with the declarations of any number of witnesses, who do not produce conviction in your minds, against a lesser number or against a presumption of law or evidence which satisfies your minds; in other words, it is not the greater number of witnesses which should control you where their evidence is not satisfactory to your minds, as against a lesser number whose testimony does satisfy your minds. . . .

"The testimony of one witness entitled to full credit is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony even though a number of witnesses on the other side might testify to an opposite state of facts, if, from the whole case, the jury believes that the greater weight of the evidence considering its reliability and the credibility of the witness is on the one witness as against the greater number of witnesses."

This instruction is long, covering over seven typewritten pages in the reporter's transcript. Taken by themselves, the quoted portions, especially the second paragraph, do not correctly state the law applicable in criminal cases,—that of reasonable doubt. The closing two and one half pages of the instruction are devoted to a correct statement of the law of the presumption of innocence and of the doctrine of reasonable doubt, including the definition of reasonable doubt as contained in section 1096 of the Penal Code. Several instructions on the presumption of innocence and reasonable doubt proposed by defendant were also given.

It is firmly established that instructions must be considered in their entirety, and their effect on the jury must be weighed after they have been read together as a whole and not from some isolated paragraphs in them. After studying all of the instructions given we deem it a remote possibility that the jury could have been misled by the portions of the instruction we have quoted.

The first quoted paragraph of the portion of the instruction

of which defendant complains is a summary of subdivision two of section 2061 of the Code of Civil Procedure which requires that juries be instructed in accordance with its terms. The giving of such an instruction was before the court in *People* v. *Hahn*, 58 Cal.App. 704 [209 P. 268]. The court was of the opinion that it merely stated a legal platitude the giving of which could have done no harm.

Defendant complains of other instructions given by the jury. We have examined all of them and do not consider them sufficiently erroneous to require detailed consideration here.

The portion of the order denying the motion for new trial under count one of the information charging the defendant with perjury is reversed.

The portion of the order denying the motion for new trial under count two of the information charging the defendant with grand theft is affirmed.

Barnard, P. J., and Griffin, J., concurred.